UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TONYA GADDIS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-3752 |
| | § | |
| HOUSING AUTHORITY OF THE | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| *Defendant.* | § | |

MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Housing Authority of the City of Houston's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. 14. On consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the court GRANTS defendant's motion for summary judgment.

I. BACKGROUND

Defendant is a public body corporate created under the authority of Chapter 392 of the Texas Local Government Code. Dkt. 14. Defendant, like other housing authorities, applies to the U.S. Department of Housing and Urban Development ("HUD") for Section 8 housing subsidy funds, which are provided to eligible families in accordance with HUD's regulations. *Id.* Plaintiff began working for defendant on April 17, 2006, as an Occupancy Technician. Dkts. 1, 14. Occupancy Technicians are assigned to "recertification" or "move" teams and are responsible for managing Section 8 clients' caseloads, including certifying and recertifying their ability to receiving housing subsidies from defendant. Dkt. 14. Recertification teams conduct annual examinations of clients' income and household composition to determine whether they are still eligible to receive Section 8

funding and the amounts they should receive. *Id.* Occupancy Technicians on move teams coordinate client families' moves to new residences within the program. *Id.*

HUD rules and regulations require timely completion of recertifications to ensure that housing subsidies are not overpaid or underpaid. Dkt. 14. Proper completion of both recertifications and moves requires the Occupancy Technician to submit the appropriate data to the HUD's Public Housing Information Center (PIC) system. *Id.* The recertification and move processes require completion of certain paperwork, but a recertification or move is not complete until the data has been submitted to the PIC system and accepted by it as accurate. *Id.* Defendant does not receive Section 8 funds for a client unless the client has been successfully entered into the PIC system. *Id.*

Plaintiff was assigned to a "move" team on October 18, 2006. *Id.* Defendant asserts, with evidentiary support, that Occupancy Technicians on move teams also must perform recertifications in order to approve a family's move to a new residence; however, plaintiff says that move teams perform "moves" but she was not required to perform "recertifications." Dkts. 1, 14, 19.

On July 14, 2006, plaintiff received a performance appraisal rating her job performance as "Improvement Needed" in several categories, including: "has clear understanding of program requirements"; "complies with the eligibility guidelines of the department"; "accurately evaluates and verifies financial eligibility of clients"; "anticipates and is prepared to complete expected or routine assignments"; "completes work with little supervision"; and "meets deadlines for inspections, yearly reviews, and re-examinations." Dkt. 14, Ex. A. Plaintiff's overall performance rating in this evaluation was "less than satisfactory." *Id.* Plaintiff estimates that she became pregnant on July 21, 2006, and concedes that her performance appraisal occurred before she was pregnant. *Id.* Defendant knew that plaintiff was pregnant by October 30, 2006, because she told coworkers about her pregnancy and took one week of medical leave due to pregnancy-related illness.

2

*Id.*  Plaintiff admits that none of her coworkers or supervisors displayed any animus or made any negative comments about her pregnancy at any time.  *Id.*, Ex. A.

HUD annually evaluates each housing authority's performance in specific aspects of the Section 8 tenant assistance programs.  *Id.*  At times relevant to this lawsuit, HUD had given defendant a "troubled" designation, which can result in reduced funding or other sanctions.  *Id.*  One of the apparent reasons for the "troubled" designation was that defendant had a backlog of uncompleted recertifications and moves.  *Id.*  As a result, HUD prescribed a "Corrective Action Plan" for defendant; if defendant did not comply, HUD could take over its operations.  *Id.*  In an effort to comply with the plan, defendant set minimum ("termination threshold") performance requirements for its employees.  *Id.*  For Occupancy Technicians, defendant set a termination threshold of ten completed recertifications or moves per month, for the months of November and December 2006.  *Id.*  In comparison, the optimal productivity goal for Occupancy Technicians was forty-five completed recertifications or moves per month; technicians who completed more than forty-five per month would receive bonus pay.  *Id.*

In January 2007, defendant's information technology director prepared a report of the Occupancy Technicians' productivity statistics, including the number of recertifications and moves that each Occupancy Technician completed in November and December 2006.  Dkt. 14.  The report included only "properly completed" recertifications or moves, meaning those that had been entered into and accepted by the PIC system.  *Id.*, Ex. D.  It indicated that plaintiff completed no recertifications or moves in November 2006 and only six recertifications or moves in December 2006.  *Id.*, Ex. D.  Plaintiff claims that she actually performed eighty-one moves during this time period, but provides no evidence of this and does not explain why the PIC system cannot account for the alleged eighty-one moves.  Dkt. 19.

3

Based on the productivity reports, defendant decided to terminate fifteen employees (including plaintiff) for failing to meet the termination threshold productivity requirements. Dkt. 14. Some of these employees, like plaintiff, were members of move teams. *Id.* Defendant also decided to terminate three other employees who failed to pass the required competency tests. *Id.* Thus, a total of eighteen employees in total were selected for termination. On January 8 and 9, 2007, plaintiff and fifteen other employees were terminated; the other two employees were terminated within the month. *Id.* Plaintiff admits that she was the only terminated employee who was pregnant. *Id.*, Ex. A.

Plaintiff claims that, on January 8, 2007, approximately fifteen minutes before she was fired, she spoke with a clerical employee in defendant's human resources office regarding whether she would be able to take maternity leave. Dkt. 14, Ex. A; Dkt. 19. She obtained maternity leave request forms and returned to her desk. *Id.* Fifteen minutes later, she was called up to the human resources department and informed that she was being terminated for failure to meet the termination threshold productivity requirement of ten recertifications or moves per month. Dkt. 14.

Plaintiff filed an internal grievance with defendant alleging that her termination was unjust because she was not required to conduct recertifications as a member of a move team. *Id.* The grievance did not contain any allegation that she had been discriminated against because of her pregnancy. *Id.* Plaintiff obtained counsel and participated in an administrative hearing; at the hearing she alleged pregnancy discrimination because she was fired after requesting maternity leave forms. *Id.* Plaintiff's grievance was denied on the basis that she failed to demonstrate her termination was wrongful. *Id.* Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which closed plaintiff's file after three months and issued a Dismissal and Notice of Rights because it was unable to conclude that a violation of

Title VII had occurred.  *Id.*  Subsequently, plaintiff filed the instant suit against defendant, claiming pregnancy discrimination under Title VII and the Texas Commission on Human Rights Act ("TCHRA").

## II. STANDARD OF REVIEW

### A.  Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required.  *Id.*  "For any matter on which the non-movant

5

would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*,  754 F.2d 1212, 1221 (5th Cir. 1985).

**B.  Pregnancy Discrimination Standard**

Title VII makes it unlawful for an employer to discharge an employee because of her sex, which includes discrimination because of pregnancy.  *See* 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e(k) (including discrimination "because of or on the basis of pregnancy," per the Pregnancy Discrimination Act); *Wallace v. Methodist Hosp. System*, 271 F.3d 212, 219-220 (5th Cir. 2001). A claim brought under the Pregnancy Discrimination Act is analyzed like any other Title VII discrimination claim.  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998).

Under Title VII, a plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano*, 138 F.3d at 206.  Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. East Mississippi Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993)).  When a plaintiff offers only circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination, which, if established, raises a presumption of discrimination.  *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179-80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817 (1973)).  To establish a prima facie case, the plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated."  *Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford*, 197 F.3d at 184).  The plaintiff must raise a genuine issue of material fact as to all four elements of her prima facie case of discrimination.  *Id.*

7

If the plaintiff successfully establishes a prima facie case of discrimination, the employer must then produce a legitimate nondiscriminatory reason for the adverse employment decision. *Willis*, 445 F.3d at 420.  Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates and the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that the non-discriminatory reason is merely pretextual.  *Id.*

To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.  *Laxton*, 333 F.3d at 578.  The plaintiff must rebut each nondiscriminatory reason articulated by the employer.  *Id.*; *Wallace*, 271 F.3d at 220.  A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Id.*  The pretext inquiry is not whether the defendant's proffered reason was an incorrect reason for her discharge. *Laxton*, 333 F.3d at 579; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002).  Instead, the pretext inquiry concerns "whether [the defendant's] perception of [the employee's] performance, accurate or not, was the real reason for her termination."  *Id.* (quoting *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001)).  The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against her because of her protected status.  *Wallace*, 271 F.3d at 219–20.

A stated purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." Tex. Lab. Code § 21.001(1).  The TCHRA prohibits an employer from, among other things, discharging an employee because of her gender.  *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007); *see also* Tex. Lab. Code § 21.051. Section 21.051(1) provides that "[a]n employer commits an unlawful employment practice if because of . . . sex . . . the employer . . . discharges an individual, or discriminates in any other

manner against an individual in connection with . . . privileges of employment." *Id.*  Under the TCHRA, sex discrimination includes discrimination "because of or on the basis of pregnancy."  Tex. Lab. Code § 21.106(a).  Fifth Circuit courts usually do not address TCHRA claims separately from Title VII claims, because TCHRA claims generally are analyzed under the Fifth Circuit's Title VII framework and precedent.  *See Wallace*, 271 F.3d at 220 n. 10; *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999); *but see Arismendez*, 493 F.3d at 606-07 (discussing a difference in the two statutes' required level of proof of the employer's motivation for the unlawful employment practice).

## III. ANALYSIS

### A. Title VII & The Pregnancy Discrimination Act

Defendant argues that this case must be analyzed under the *McDonnell Douglas* burden-shifting framework because plaintiff has provided no direct evidence of discrimination.  Defendant asserts that it is entitled to summary judgment because plaintiff has failed to establish a prima facie case of discrimination under the *McDonnell Douglas* framework, which requires a plaintiff to raise a genuine issue of material fact as to all four elements of the prima facie case.  Defendant concedes that plaintiff satisfies the first three required elements—she is a member of a protected class (female/pregnant), she was qualified for her position (met the requirements to be hired as an Occupancy Technician), and she suffered an adverse employment action (termination).  However, defendant argues that plaintiff has not and cannot establish the fourth element, that similarly situated, non-pregnant employees were treated more favorably.  Instead, defendant argues, similarly situated employees were treated exactly the same; all of the Occupancy Technicians who did not meet the termination threshold productivity requirements were fired, just as plaintiff was, and none of the other terminated employees was pregnant.

9

Defendant further argues that, even if plaintiff had established a prima facie case, defendant has provided a legitimate, non-discriminatory reason for her termination: she failed to meet an objective productivity metric, along with many other individuals who were fired for the same reason. Defendant claims that plaintiff's failure to satisfy minimum productivity requirements was the only reason for her termination, citing plaintiff's history of poor performance before she became pregnant. Defendant highlights the fact that it reviewed plaintiff's performance metrics well before she requested maternity leave information on January 8, 2007. As indicated on the documents themselves, defendant prepared plaintiff's termination conference paperwork on January 5, 2007. Objectively, defendant states, plaintiff's failure to complete a single move in November 2006 and completion of only six moves in December 2006 placed her well below the termination threshold applicable to all Occupancy Technicians. Defendant also points out that it initiated the terminiation threshold productivity requirements under orders from HUD to improve its operational efficiency.

Because defendant has produced a non-discriminatory reason for the action, defendant asserts that the burden shifts to plaintiff to show that the proffered reason was pretext for discrimination. Defendant argues that plaintiff has not raised a genuine issue of material fact as to whether defendant's non-discriminatory reason, failure to meet the termination threshold productivity requirements, was pretextual. Although plaintiff contests the accuracy of the productivity report, defendant argues that a court does not consider whether a defendant's reasons were accurate when it is evaluating a question of pretext. Instead, the court considers whether the asserted reason, accurate or not, was the real reason for the plaintiff's termination. Further, defendant says it relied on the same report to terminate the plaintiff as it did to terminate all of the other (non-pregnant) employees; even if the report had been inaccurate, its findings were nevertheless the real reason that defendant terminated the plaintiff and the other employees. Defendant says plaintiff's only asserted

10

evidence of pretext could be that the defendant fired her shortly after she requested maternity leave information; however, defendant made the termination decision and prepared plaintiff's termination paperwork days before, eliminating the inference that her request caused defendant's decision.

Plaintiff simply does not answer defendant's arguments.  In her response, plaintiff reiterates her claim that she actually completed eighty-one moves during November and December 2006. Plaintiff provides no evidence to support this claim, nor any explanation of why defendant's productivity reports indicate differently.  She also reiterates that she was terminated shortly after requesting maternity leave information, but does not address defendant's assertion that the actual termination decision was made days before she requested the information.  Importantly, plaintiff does not argue, and provides no evidence, that any other similarly situated employee was treated any differently than she was.  Nor does plaintiff make any showing that the defendant's asserted reason for firing her was a mere pretext to hide its discriminatory intent.

**B. Texas Commission on Human Rights Act**

The same analytical framework applies to plaintiff's Title VII and TCHRA claims.  In summary, plaintiff has not presented any direct evidence of discriminatory animus on defendant's part, and in fact has admitted that no one employed by defendant displayed any discriminatory animus towards her.  When a plaintiff offers only circumstantial evidence, per *McDonnell Douglas*, she must establish a prima facie case of discrimination by raising a genuine issue of material fact as to all four elements of her prima facie case.  Concededly, plaintiff has established the first three elements of her case: she is a member of a protected class, was qualified for her position, and suffered an adverse employment action.  But, the defendant correctly argues that plaintiff has presented absolutely no evidence of the fourth element: that others similarly situated were more favorably treated.  In her response to defendant's motion, plaintiff does not address this element.

11

Because the plaintiff bears the burden of proof on this element, the defendant must only highlight absence of evidence creating a genuine issue of material fact.  The defendant has done so, and the plaintiff has not made any showing to the contrary.  Because the plaintiff has not established a prima facie case of discrimination, the *McDonnell Douglas*-based analysis terminates, and plaintiff's TCHRA claim fails.

## IV. CONCLUSION

Considering the law and the evidence presented, the court concludes that plaintiff has not established a prima facie case of discrimination with regard to either her Title VII or TCHRA claim. Accordingly, defendant is entitled to summary judgment.  Therefore, defendant's motion for summary judgment is GRANTED.

Signed at Houston, Texas on November 14, 2008

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

12